1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**NORTHERN DISTRICT OF CALIFORNIA**

8
9

**GEORGE J. AUSTIN,**

Plaintiff**,**

10

vs.

11

**GEORGETOWN UNIVERSITY, ET AL.,**

12

Defendants**.**

13

CASE NO. 19-cv-05631-YGR

**ORDER GRANTING MOTION OF DEFENDANT GEORGETOWN UNIVERSITY TO DISMISS AMENDED COMPLAINT; DISMISSING ALL DEFENDANTS**

Dkt. No. 103

14    Presently before the Court is the motion of defendant Georgetown University to dismiss

15 the amended complaint filed by plaintiff George J. Austin. (Dkt. No. 103.) Having carefully

16 considered the papers submitted and the pleadings in this action, and for the reasons set forth

17 below, the Court **GRANTS** the Motion to Dismiss **WITHOUT LEAVE TO AMEND**.

18 **I.    BACKGROUND**

19    Plaintiff filed this action on September 6, 2019, originally alleging claims for damages

20 against defendants Georgetown University, Georgetown University Law Center, and an unknown

21 photographer commissioned by Georgetown based on alleged "Commercial Appropriation of

22 Photograph" and "Invasion of Privacy." (Dkt. No. 1.) This claim alleged that Georgetown used a

23 photograph of Austin in a marketing brochure for their law school without his consent or

24 authorization, and that Georgetown's simultaneous discrimination against him "intensified" their

25 liability. (*Id*. at 7-8.) Georgetown filed a motion to dismiss the original complaint, followed by

26 Austin's request to file an Amended Complaint, mooting the pending motion.

27    After seeking permission to file an Amended Complaint, Austin filed an "interim draft

28 Amended Complaint" (Dkt. No. 74) and an additional 15 "notices" (Dkt. Nos. 75-78, 81-91). The

Court struck all the "notices" in its January 19, 2021 Order, stating:

> In light of pending motion to dismiss and plaintiff's deadline to file a complete amended pleading by February 2, 2021, the case management conference set for Monday, January 25, 2021 is VACATED. Plaintiff's request for an extension of time to submit a case management statement (Dkt. No. 93) is DENIED AS MOOT to be reset on further notice.

> Plaintiff George J. Austin is hereby ADMONISHED to limit his filings to documents pertaining to specific motions or hearings. Plaintiff's multiple submissions of "notices" concerning "material facts, context, and identity verification" and attaching voluminous exhibits are apparently unrelated to any pending motion or pleading, and thus are improper filings.

> The notices filed by plaintiff at Docket Nos. 56, 57, 58, 59 60, 61, 62, 63, 64, 65, 66, 68, 60, 71, 72, 77, 78, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, and 91 are STRICKEN and will not be considered by the Court.

(Dkt. No. 94.)[1]

Austin filed a 180-page document captioned "Amended Complaint" on February 2, 2021. (Dkt. No. 98, "AC".) In addition to the original claim concerning the brochure, Austin added allegations that Georgetown subjected him to a variety of torts, discriminated against him on the basis of a disability, and retaliated against him while he was enrolled in Georgetown's law school. (*See* AC at 65-180.) He alleges claims for defamation, "right of publicity," invasion of privacy, intentional infliction of emotional distress, fraudulent misrepresentation, fraudulent concealment, false light, tortious interference with economic advantage, disability discrimination and retaliation. (*Id*.)

Georgetown now moves to dismiss the Amended Complaint. (Dkt. No. 103.) Georgetown seeks dismissal on four grounds: (1) the Court lacks personal jurisdiction; (2) the claims are all barred based upon the applicable statutes of limitations; (3) the Amended Complaint fails to allege

---

[1] Plaintiff thereafter filed additional documents including Dkt. No. 95 ["Acknowledgement of Order"] and a series of filings [Dkt. Nos. 96, 100, 101] that he represents to be documents "informing the court of existing bias" and providing "contextual information" for his allegations. Docket No. 96 is a printout of what appears to be an online complaint Austin made to the United States Department of Justice alleging discrimination by Georgetown against him on account of age, disability, family status, genetic information, and race/color. Docket Nos. 100 and 101 are captioned "Disclosures Per General Order 40 Prohibition of Bias" and attach printouts from various online publications concerning racial bias against Black lawyers. While the Court understands plaintiff to offer the documents as context for his allegations of discrimination and retaliation, they are not relevant to analysis of the Court's jurisdiction and have not been considered in connection with this Order.

facts sufficient to state the claims; and (4) plaintiff failed to comply with Rule 8's requirements to

provide a "short and plain statement of the claim." Plaintiff opposes the motion.[2] Because the

Court finds that it lacks personal jurisdiction over Georgetown, it does not reach the additional

grounds.

## II.    DISCUSSION

Defendant Georgetown contends that Austin failed to offer a proper basis for personal

jurisdiction over it. In the Amended Complaint here, Austin alleged that Georgetown is an

"education corporation organized and existing under the laws of the District of Columbia with its

principal place of business in that District, its headquarters, located in the District of Columbia."

(AC at 17). He further alleged:

> Because a) marketing material of Plaintiff, by use of Defendants Georgetown,
> was discovered by Plaintiff's friend in California (also a citizen of California),
> and b) materials were intentionally sent for purpose of attracting business, as
> evidence by (application costs and selling points of Defendant's organization, and
> service in the materials including Plaintiff), and c) all marketing to Plaintiff by
> Georgetown happened in California, and d) California is a high contact, and
> regularly recruited from State for Georgetown  representing a significant number
> of their students), and e) with physical locations in the state in partnership with
> local institutions the minimum contact standard would be more than met as
> Defendants "act[ed] purposefully to connect herself to the forum state;" - 9. Asahi
> Metal Industry Co. v. Superior Court, 480 U.S. 102 (1987).

(AC at 18.)

Under Rule 12(b)(2), a defendant may be dismissed if the court lacks personal jurisdiction

over it. Federal courts ordinarily follow state law in determining the bounds of their jurisdiction

---

[2] The Court previously ruled on self-represented plaintiff's motion for extension of time
(Dkt. No. 108) and motion to continue the hearing (Dkt. No. 109) on defendant's motion to
dismiss. (*See* Order at Docket No. 112.) As stated therein, defendant did not oppose plaintiff's
request that the Court consider his opposition documents, filed at Dkt. Nos. 104, 105, and 106,
despite some of them being filed untimely. The Court has considered those documents in
connection with Austin's opposition to the instant motion.
        However, subsequent to the close of briefing on this motion, Austin filed additional
documents seeking clarification about filing "publicly available exhibits, testimony, on the record,
and coverage highlighting issues raised in pleadings" which Austin contends relate to his earlier
filings. (*See* Dkt. Nos. 113 at 2 and 114 at 2; *see also* Dkt. Nos. 115 ["Letter, Article, Public
Testimony"] and 116 ["Letter American Bar Association"].) Those additional documents, filed
without leave of Court, and not directly in support of or opposition to any pending motion or
hearing, are **STRICKEN**. Again, the documents submitted are not relevant to analysis of the Court's
jurisdiction and have not been considered in connection with this Order.

over parties, looking to the state's long arm statute regarding service of summons. *See* Fed. Rule Civ. Proc. 4(k)(1)(A) (service of process effective to establish personal jurisdiction over defendant subject to jurisdiction in the state court where the district is located); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (same). California's long-arm statute, in turn, permits exercise of personal jurisdiction to the full extent permitted by federal due process. *Id.*; *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017). The party filing the complaint bears the burden to establish jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

In deciding whether a *prima facie* showing of personal jurisdiction has been made, a district court must accept as true the uncontroverted allegations in the complaint, and conflicts between facts contained in the parties' affidavits must be resolved in a plaintiff's favor. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). "[T]he plaintiff cannot simply rest on the bare allegations of its complaint," but "uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800.

For purposes of federal due process, two types of personal jurisdiction exist: general and specific. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1779–81 (2017). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* A court with only specific jurisdiction over a defendant is limited to hearing claims deriving from the facts that establish jurisdiction in the forum. *Id.*

### A. General Jurisdiction

To demonstrate general jurisdiction over a defendant in California, plaintiff must establish that the defendant has contacts that are "so 'continuous and systematic' as to render [it] essentially at home in" California. *Williams,* 851 F.3d at 1020 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). As the Supreme Court held in *Daimler AG*, general jurisdiction is limited to the circumstance in which a defendant's "affiliations with the State are so 'continuous and systemic' as to render [it] essentially at home in the forum State." *Id.* at 119 (quoting *Goodyear*, 564 U.S. at 919). In *Daimler AG*, the Supreme Court reversed the Ninth

1    Circuit, finding that neither Daimler nor Mercedes Benz USA's sizable sales in California gave

2    rise to all-purpose, general jurisdiction there. *Id*. at 139. Likewise, here, the allegations of the

3    Amended Complaint do not describe a level of continuous, systemic affiliations with California

4    that would establish the "exceptional case" necessary for general jurisdiction. *Id.* at 139 n.19.

5              Here, plaintiff alleges Georgetown marketed itself to him while he was in California, and

6    regularly recruits California residents. (AC at 18.) Numerous courts have found that long-

7    standing recruiting, academic exchange, and fundraising activities in the forum by a non-forum

8    resident university are inadequate to confer general jurisdiction. *See, e.g., Park v. Oxford Univ.*,

9    35 F.Supp.2d 1165, 1167 (N.D. Cal. 1997), *aff'd,* 165 F.3d 917 (9th Cir. 1998); *Gehling v. St.*

10   *George's Sch. of Med., Ltd.,* 773 F.2d 539, 541–43 (3d Cir. 1985) (no general jurisdiction despite

11   evidence that medical college enrolled 6% of its students from the forum state, received several

12   hundred thousand dollars of tuition from residents of the forum state, toured cities in the forum

13   state, and established a joint international program with a forum state college); *Richards v. Duke*

14   *Univ.*, 480 F. Supp. 2d 222, 230 (D.D.C. 2007) (university's recruiting activities and small number

15   of adjunct facility residing in forum insufficient to establish personal jurisdiction; "[g]enerally,

16   colleges and universities are not subject to personal jurisdiction in all states from which their

17   students hail, as this would unfairly expose them to litigation in many distant forums.") Thus, the

18   Court finds general jurisdiction is not established and personal jurisdiction over Georgetown must

19   be shown, if at all, by way of specific jurisdiction.

20        **B.       Specific Jurisdiction**

21             Specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying

22   controversy" that is "activity or [ ] occurrence[s] that tak[e] place in the forum State and [are]

23   therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (internal quotation marks

24   omitted). In order for a court to have specific jurisdiction over a defendant, "the defendant's suit-

25   related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571

26   U.S. 277, 284 (2014). The relationship between the defendant and the forum state "must arise out

27   of contacts that the 'defendant [itself]' creates with the forum State." *Id.* (quoting *Burger King*

28   *Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "[A] defendant's relationship with a plaintiff or

1    third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286.  The Ninth Circuit

2    applies a three-prong test to determine whether a non-resident defendant's activities are

3    sufficiently related to the forum state to establish specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or
> consummate some transaction with the forum or resident thereof; or perform
> some act by which he purposefully avails himself of the privilege of conducting
> activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-
> related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice,
> *i.e.* it must be reasonable.

9    *Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  The

10   plaintiff bears the burden of demonstrating the first two prongs.  *Id.*  Only if the plaintiff meets

11   their burden on both prongs one and two does the burden shift to defendant to show that the

12   exercise of personal jurisdiction would not be reasonable.  *Id.*

13        Personal jurisdiction depends upon the nature and quality of the defendant's contacts and

14   whether the forum state was the focus of defendants' activities and their effects.  *Calder v. Jones,*

15   465 U.S. 783, 789 (1984).  "[M]erely asserting that a defendant knew or should have known that

16   his intentional acts would cause harm in the forum state is not enough to establish jurisdiction

17   under the effects test."  *Zehia v. Superior Ct.*, 45 Cal. App. 5th 543, 554 (2020) (*quoting*

18   *Pavlovich v. Superior Court*, 29 Cal.4th 262, 270-71 (2002)).  "'[T]he relationship must arise out

19   of contacts that the defendant himself creates with the forum [s]tate,' not contacts between the

20   forum state and the plaintiff or a third party."  *Id*. (*quoting Walden*, 571 U.S. at 285 (internal

21   formatting omitted)).

22                    *1.      Defendant's Alleged Unauthorized Use of Photograph*

23        For purposes of the analysis here, it is important to keep in mind the two different, though

24   ostensibly related, sets of facts alleged by Austin.  First, underlying his claims of right of publicity

25   and invasion of privacy are the allegations that Georgetown used his likeness in a promotional

26   brochure without his consent.  He alleges he was sent a photograph of Georgetown's brochure by

27   a friend who recognized him in a picture therein.  He further alleges Georgetown "knowingly

28   included the photograph to be included in marketing, and distribution materials . . . for

1    commercially exploitative purposes." (AC at 21.) In opposition to the motion, he adds that

2    Georgetown sent the brochure at issue to California. (Dkt. No. 106 at 8:10-12.)

3           The Court finds these allegations insufficient to establish Georgetown's contacts with a

4    California forum. While they describe purposeful activity, they do not describe purposefully

5    directing such activity *to a California forum*. The effects test looks to whether the alleged

6    intentional tort caused effects "in *California,* not just to a plaintiff who lived there." *Walden*, 571

7    U.S. at 288 (*citing Calder*, 465 U.S. at 788-89). Plaintiff alleges the photograph was used in a

8    recruiting brochure, not apparently targeted to a California-specific audience. The photograph was

9    taken at a time when Austin was still on the Georgetown campus in 2013. (AC at 20-21.) That

10   Georgetown "knew or should have known" that plaintiff had returned to California at the time the

11   brochure was circulated is not sufficient to establish jurisdiction under the effects test. *See*

12   *Pavlovich*, 29 Cal.4th at 270-71 (posting California plaintiff's propriety information on internet

13   insufficient to establish "express aiming" at California forum); *see also Burdick v. Sup. Ct.*, 233

14   Cal.App.4th 8, 25 (2015) (public posting of an allegedly defamatory statement on social media

15   insufficient to show "substantial connection" to California even if defendants aware plaintiff

16   resided in California; no evidence the social media page itself "intentionally targeted California as

17   opposed to any other jurisdiction"); *Strasner v. Touchstone Wireless Repair & Logistics, LP*, 5

18   Cal.App.5th 215, 233 (2016) (failure to establish minimum contacts for specific jurisdiction where

19   defendant cell phone refurbisher was alleged to have uploaded sensitive photograph from

20   plaintiff's mobile phone without authorization and posted on plaintiff's social media page). Thus,

21   the contacts alleged by Austin regarding the use of his photograph in their brochure are

22   insufficient to subject Georgetown to personal jurisdiction in a California forum.

23           2.       *Defendant's Alleged Defamation, Discrimination, and Retaliation*

24           Second, and separately, Austin alleges Georgetown was "discriminating [against him],

25   retaliating, intentionally inflicting emotional distress, [and] tortiously interfering with his

26   economic advantage." (AC at 23.) He alleges that "[i]nstead of complying with their own policy

27   on [discrimination] issues, they chose instead to further break the law . . . by placing me on

28   sabbatical/leave of absence in my 3L year without explanation." (*Id.*) Though at times hard to

7

1    follow, the Amended Complaint seems to allege that "as early as Fall of 2014," Austin submitted

2    multiple complaints of harassing or illegal behavior against him by Georgetown employees, and

3    that he met with the Dean of Students about this. (*Id*. at 23, 25.)  When he later asked for an

4    "extension" due to multiple deaths of loved ones in a short period of time, he was retaliated

5    against, placed on administrative leave, and Georgetown "reached out to police" rather than to the

6    people and departments about which plaintiff had complained. (*Id*. at 24-25.)  In opposition to the

7    motion, he further argues that Georgetown sent the brochure to California and "sent defamatory,

8    and still uncorrected materials" to California as well, apparently having to do with his forced leave

9    of absence from the school. (Dkt. No. 106 at 8:10-12.)  Austin further contends that Georgetown

10   targeted its actions toward him in California, placing him on a leave of absence "in retaliation" for

11   his complaints, sending "defamatory" messages to him by mail in California with knowledge that

12   he had returned to California. (*Id*. at 8:14-17, 8:22-9:2, 9:12-21.)

13          These allegations, too, fail to establish a basis for specific personal jurisdiction over

14   Georgetown in a California forum.  The allegations describe conduct that occurred *at Georgetown*,

15   prior to Austin's leave of absence and return to California.  While Austin argues the injury to him

16   is ongoing due to the "defamatory" and "uncorrected" materials Georgetown has since mailed to

17   him (Dkt. No. 106 at 8:10-11, 8:22-23, 9:20-23), his alleged complaints to Georgetown's

18   administration, and the retaliation and forced leave of absence he asserts followed, all occurred

19   outside California.  That those actions fortuitously have an effect in this forum because Austin

20   now resides in California does not confer jurisdiction over Georgetown here.  *Walden*, 571 U.S. at

21   288; *see also Roman v. Liberty Univ., Inc.*, 162 Cal.App.4th 670, 680 (2008) (university's

22   recruitment of plaintiff in California and his execution of scholarship agreement in California were

23   insufficient to establish California jurisdiction; no substantial connection between those activities

24   and plaintiff's subsequent injury while enrolled at university).  In sum, Austin has also failed to

25   demonstrate that Georgetown is subject to personal jurisdiction in a California forum based on its

26   alleged conduct in connection with his alleged forced leave of absence or related retaliatory and

27   defamatory actions.

28

**III.    CONCLUSION**

Accordingly, the Motion to Dismiss is **GRANTED WITHOUT LEAVE TO AMEND** for lack of personal jurisdiction over defendant Georgetown University (also named in the Amended Complaint as Georgetown University Law Center).  Defendants Georgetown University and Georgetown University Law Center are **DISMISSED**.

The Court notes that one defendant, named as "Photographer Commissioned by Georgetown" has not yet been served, although this action has been pending for nearly two years. This last defendant is **DISMISSED** for failure to prosecute.

This terminates Docket No. 103.

The Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: July 14, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**